UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK TRUEBLOOD and
DIANA TRUEBLOOD,

       Plaintiffs,

v.                                       Case No. 11-10737

RYDER TRUCK RENTAL, INC.,
d/b/a RYDER TRANSPORTATION          HON. AVERN COHN
SERVICES,

       Defendant.

_____/

**MEMORANDUM AND ORDER DENYING PLAINTIFF'S
MOTION FOR ORDER EXTINGUISHING CLAIM (Doc. 31)
AND GRANTING THIRD PARTY AIG'S MOTION TO
INTERVENE (Doc. 33) AND GRANTING AIG'S MOTION TO
<u>ENFORCE WORKERS' COMPENSATION LIEN (Doc. 34)</u>**

## I. INTRODUCTION

This is a negligence case. Plaintiff Mark Trueblood was employed as a long haul truck driver for Action Freight Systems ("AFS"). During the course of his employment, Trueblood fell while exiting the passenger door of his parked tractor. He claimed to have sustained serious injuries. Trueblood brought a negligence claim against the lessor of the tractor, Ryder Truck Rental, Inc. ("Ryder"), claiming that the fall was a result of a missing step on the tractor, a condition known to Ryder. The case was facilitated and settled for $320,000.00.

Because the injury occurred in the course of Trueblood's employment, he sought benefits under the Michigan Workers' Compensation Disability Act ("WCDA"). AFS

admitted primary liability and its workers' compensation insurer, AIG Insurance Company ("AIG"), paid benefits to and on behalf of Trueblood.  AIG now seeks to enforce a lien on the settlement proceeds of the negligence case for approximately $75,000.00 to recoup the workers' compensation benefits it paid.

Now before the Court is Trueblood's motion for an order extinguishing AIG's claim to the proceeds (Doc. 31), AIG's motion to intervene (Doc. 33), and AIG's motion to enforce a workers' compensation lien on the settlement proceeds (Doc. 34).

For the reasons that follow

Trueblood's motion for an order extinguishing AIG's claim is DENIED;

AIG's motion to intervene is GRANTED; and

AIG's motion to enforce a workers' compensation lien is GRANTED.

## II. BACKGROUND

On January 26, 2009, Trueblood arrived at work at AFS in Taylor, Michigan and was told to drive the company's 2006 Freightliner tractor to California.  While conducting an inspection of the tractor prior to departing, Trueblood entered the tractor through the driver's side door.  He examined the gauges inside the vehicle.  While still inside the tractor, another employee entered the tractor from the driver's side door.  Thus, when Trueblood was done with his inspection he exited the tractor from the passenger side door.  On his way out, Trueblood fell to the ground because the bottom step on the passenger side of the tractor was missing.  He sustained serious injuries.

Trueblood obtained workers' compensation benefits for his injuries in the amount of $120,250.28 through AFS's workers' compensation insurer, AIG.

Because AFS leased the tractor from Ryder and Ryder was responsible for vehicle

2

maintenance, Trueblood sued Ryder under a negligence theory.  Trueblood alleged that Ryder had notice of the missing passenger side step.  As indicated earlier, the case was facilitated and settled for $320,000.00.

### III. DISCUSSION

The issue before the Court is whether AIG is entitled to reimbursement, through the enforcement of a lien, for the workers' compensation benefits it paid to Trueblood.  AIG says that, after applying the appropriate formula, it is entitled to enforce a lien for approximately $75,000.00.  AIG argues that Trueblood's settlement included both economic and non-economic benefits, and, therefore, its lien attaches to the entire settlement amount.

Trueblood disagrees.  Trueblood says that Michigan's No-Fault Automobile Act, Mich. Comp. Laws 500.3101 *et seq.* (the "no-fault act"), applied to his suit against Ryder and limited his recovery to non-economic benefits.[1]  Thus, Trueblood's position is that AIG's workers' compensation lien cannot attach to the negligence settlement amount because the workers' compensation benefits were, in essence, a substitution for the no-fault economic benefits he was otherwise entitled to.

The dispute centers around the parties' interpretation of the no-fault act and its interplay with the WCDA.  For the reasons that follow, the Court finds that the no-fault act was inapplicable to Trueblood's suit against Ryder.  Thus, AIG is entitled to intervene, and its lien attaches to the total amount of the settlement proceeds.

---

[1] Indeed, it is apparent from Trueblood's complaint (Doc. 1) that he believed the no-fault act applied to his fall and that he was limited to non-economic damages and economic damages in excess of the limits set in the no-fault act.  Trueblood specifically pled that he sustained an impairment of an important body function.

3

**A. Trueblood's Claim Against Ryder Was Not
Covered By Michigan's No-Fault Automobile Act**

The no-fault act was adopted by Michigan's legislature in 1973.  *McCormick v. Carrier*, 487 Mich. 180, 189 (2010).  It "created a compulsory motor vehicle insurance program under which insureds may recover directly from their insurers, without regard to fault, for qualifying economic losses [*e.g.* wage loss, medical expenses etc.] arising from motor vehicle incidents."  *Id.* (citing Mich. Comp. Laws §§ 500.3101, 3105).  "Under Michigan's No-Fault Act, 'victims of motor vehicle accidents . . . receive insurance benefits for their injuries as a substitute for their common-law remedy in tort.'" *Premo v. United States*, 599 F.3d 540, 545 (6th Cir. 2010).  The no-fault act provides that an insurer in a first-party claim "is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle."  Mich. Comp. Laws § 500.3105.  In such claims, the insurer is liable for, among other economic damages, work loss for the first three years after the date of the accident, reasonable medical expenses, and reasonable charges incurred for accommodations for an injured person's care, recovery and rehabilitation.  *See* Mich. Comp. Laws. § 500.3107.

"In exchange for ensuring certain and prompt recovery for economic loss," the no-fault act limits tort liability.  *McCormick*, 487 Mich. at 189 (citing *DiFranco v. Pickard*, 427 Mich. 32, 40-41 (1986)).  The no-fault act provides that "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."  Mich. Comp. Laws § 500.3135(1).  Among other noneconomic loss, an injured party can recover in a third-party negligence lawsuit

4

"[d]amages for allowable expenses, work loss, and survivor's loss . . . in excess of the daily, monthly, and 3-year limitations" on economic loss recovery.   Mich. Comp. Laws § 500.3135.

Notwithstanding the above, the no-fault act precludes recovery of economic damages, in certain circumstances, for injuries sustained in connection with a parked motor vehicle.   *See* Mich. Comp. Laws § 500.3106(2).   This is one of those circumstances.

The no-fault act provides for economic benefits to be paid for injuries sustained from "occupying, entering into, or alighting from [a parked] vehicle."   Mich. Comp. Laws 500.3106(1)(c).   However, in the context of injuries sustained by an employee while entering into or alighting from a parked vehicle *in the course of employment*, the statute explicitly states that the no-fault act does not apply in the following circumstances:

> (2) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969 . . . are available to an employee who sustains the injury in the course of his or her employment while doing either of the following:
>
> (a) Loading, unloading, or doing mechanical work on a vehicle. . . .
>
> (b) *Entering into or alighting from the vehicle unless the injury was sustained while entering into or alighting from the vehicle immediately after the vehicle became disabled.* . . .

Mich. Comp. Laws § 500.3106(2) (emphasis added).

### 1. *Lee v. National Union Fire Insurance Co.*

The Legislative intent of section 500.3106 is discussed in Michigan case law.   *See Lee v. National Union Fire Insurance Co.*, 207 Mich. App. 323, 328 (1994) (per curiam).   In *Lee*, the plaintiff was injured "while operating a tractor-trailer that was transporting motor

5

vehicles. . . ." *Id.* at 324.  "While in transit, plaintiff noticed that one of the vehicles had broken loose of its restraints" so he "stopped at a rest area to reattach and tighten the restraints." *Id.*  After finishing, the plaintiff stepped on the fuel tank of the trailer in order to get back into the cab and slipped, hitting his back and shoulders on the edge of the fuel tank. *Id.*  Plaintiff received workers' compensation benefits in addition to no-fault personal injury protection ("PIP") benefits.  *Id.*  However, after a period of time, the no-fault insurer cancelled benefits because it took the position that section 500.3106(2) precluded plaintiff from collecting no-fault benefits.  *Id.* at 324–25.

The no-fault insurer moved for summary disposition, arguing that "plaintiff was not entitled to no-fault benefits because, at the time he sustained his injuries, he was attempting to climb from the trailer into the cab and, therefore, was still in the loading and unloading process." *Id.* at 325.  In the alternative, the no-fault insurer argued that "plaintiff sustained his injuries while 'entering into' his parked motor vehicle." *Id.*  Plaintiff filed a cross-motion for summary disposition arguing that he had completed the loading process and was injured "immediately after his vehicle had become disabled." *Id.*  The trial court granted the no-fault insurer's motion:

> In granting defendant's motion for summary disposition, the trial court determined that the Legislature had intended to provide no-fault benefits only in those situations where the "disability" is vehicular in nature.  The court found the exception for a "disabled" vehicle under subsection b requires some sort of motor vehicle disability and does not contemplate or permit recovery where a worker must pull off the road to adjust the load but there is nothing wrong with the vehicle itself.  The trial court found that plaintiff's vehicle was not "disabled," and granted summary disposition on that basis.

*Id.* at 326.

In affirming the trial court, the Michigan Court of Appeals recognized that "[t]he Legislature intended to eliminate duplication of benefits for work-related injuries except where the actual driving or operation of a motor vehicle is involved." *Id.* at 327. The court of appeals agreed with the trial court that the tractor was not "disabled":

> [D]rivers who stop to adjust their loads are fulfilling an obligation of their job. We are unable to conclude that a vehicle is "disabled" under those circumstances. Accordingly, we affirm the circuit court's determination that "disabled", for purposes of [section] 500.3106(2)(b), requires some sort of motor vehicle disability and does not contemplate or permit recovery under circumstances where the driver is required to stop and adjust or secure the cargo."

*Id.* at 329.

*Lee* clarifies that the Legislative intent of section 500.3106(2) was to preclude a party from filing a claim under the no-fault act if he or she suffered an injury in the course of employment and workers' compensation benefits were paid. The Michigan Court of Appeals in *Lee* recognized that "[s]ection 3106(2)(b) provides that in order to collect no-fault benefits in addition to worker's compensation benefits, the person must be injured while entering or alighting from the vehicle after the vehicle became disabled." *Id.* at 328. Thus, the court of appeals recognized that the "Legislature intended to limit recovery so that an employee could not collect no-fault benefits in addition to worker's compensation benefits except where the vehicle was 'disabled' and the employee was injured while entering or alighting from it." *Id.* Indeed, "the Legislature intended to eliminate duplication of benefits for work-related injuries except where the actual driving or operation of a motor vehicle is involved." *Stanley v. State Auto. Mut. Ins. Co.*, 160 Mich. App. 434, 438 (1987) (citation omitted); *see also Gunsell v. Ryan*, 236 Mich. App. 204, 210 (1999) ("This

7

provision of Michigan's no-fault act is designed to prevent duplicative recovery in no-fault act cases.") (citing *North v. Kolomyjec*, 199 Mich. App. 724, 728–29 (1993)).

### 2. This Case

This case falls within the ambit of Mich. Comp. Laws § 500.3106(2).  Trueblood was injured while "entering or alighting from" a parked motor vehicle, and he obtained workers' compensation benefits for his injuries.  He was not injured "immediately after the vehicle became disabled."  Indeed, Trueblood, by his own admission, says that Ryder had notice of the missing step on the vehicle.  This position formed the basis of his case against Ryder.

Similar to *Lee*, Trueblood was fulfilling an obligation of his job when he was checking the truck to ensure that it was ready for his trip.  Thus, he was not injured by a "motor vehicle disablity."  The truck was not being used as a motor vehicle.  Accordingly, the no-fault act has no application to this case because, under Mich. Comp. Laws § 500.3106(2), Trueblood was not entitled to no-fault benefits.  Holding otherwise would allow Trueblood to obtain both workers' compensation and no-fault benefits in contravention of the Legislature's intent.

### B. AIG's Reimbursement Under the WCDA

Because Trueblood's claim was not governed by the no-fault act, the provisions in the WCDA apply in determining what amount, if any, AIG is entitled to attach as a lien on Trueblood's settlement amount.

The WCDA provides that, "[i]n an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee . . . would be entitled to recover in an action in tort."  Mich. Comp. Laws § 418.827(5).  However, "[a]ny recovery against the

third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, *shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery* and the balance shall immediately be paid to the employee. . . ." *Id.* § 500.3106(2) (emphasis added). "The Legislature's primary purpose in permitting third-party actions was to provide a method whereby the employer could reimburse itself or its insurer for workers' compensation benefits paid to an injured or deceased employee where the injury or death resulted from the negligence of some other person." *Hearns v. Ujkaj*, 180 Mich. App. 363, 367 (1989) (citing *Petrosian v. Frizell*, 25 Mich. App. 141 (1970); *Stafford v. E.W. Bliss Co.*, 86 Mich. App. 197, 199–200 (1978)).

Here, AIG paid Trueblood workers' compensation benefits. Trueblood then sued a third party in a negligence claim for the same injuries. Thus, pursuant to the WCDA, AIG is entitled to reimbursement for the benefits it paid Trueblood, after Trueblood's expenses are deducted.

### 1. *Great American Insurance Co. v. Queen* and *Michigan Bell Telephone Co. v. Short*

Trueblood's reliance on *Great American Insurance Company v. Queen*, 410 Mich. 73 (1980) for its position that AIG is not entitled to attach a lien on the settlement proceeds is misplaced. In *Queen*, the Michigan Supreme Court held that payment of economic benefits by a workers' compensation insurer, of which the injured employee would also be entitled to under the no-fault act, are not reimbursable by the workers' compensation insurer. *Id.* at 96–97. In other words, if the workers' compensation insurer acts as the primary insurer where the insured also has the choice of seeking no-fault benefits, the workers' compensation insurer's payment of benefits is in essence a substitution for no-

9

fault benefits.  The supreme court in *Queen* stated that, if "the [workers' compensation] carrier seeks reimbursement for medical treatment which would be compensable under the no-fault act there is no right to reimbursement for such payments."  *Id.* at 97.

As explained above, however, Trueblood was not entitled to no-fault benefits because his fall from the truck falls within an exception to the no-fault act.  *See supra*, at 5–8.  While it is true that "[w]here an employee is injured in a motor vehicle accident in the course of his employment, workers' compensation benefits substitute for automobile no-fault benefits to the extent that the workers' compensation benefits duplicate no-fault benefits otherwise payable to the employee," *see Hearns*, 180 Mich. App. At 367, that is not the case here.  Because the no-fault act does not apply to Trueblood's claim, the workers' compensation benefits paid to him were not duplicate benefits that he was otherwise entitled to.  Therefore, *Queen* is not helpful to Trueblood's position.

*Michigan Bell Telephone Co. v. Short*, 153 Mich. App. 431 (1986) is also inapposite. In *Short*, "Peggy Short was injured in the course of her employment with Michigan Bell as she alighted from one of Michigan Bell's work trucks."  *Id.* at 433.  Short filed suit against Michigan Mobil Wash, the company hired by Michigan Bell "to regularly clean and maintain the beds of its work trucks."  *Id.*  Short and Michigan Mobil Wash entered into a settlement agreement for $50,000.00.  *Id.*  Subsequently, Michigan Bell brought suit against Short seeking to attach a workers' compensation lien against the settlement under Mich. Comp. Laws § 418.827(5).  The court of appeals held that Short's claim against Michigan Mobil Wash was governed by the no-fault act because "the accident arose out of the ownership, operation, maintenance or use of a motor vehicle and occurred while defendant was alighting from the work truck. . ."  *Id.* at 435 (Shepherd, J, concurring).  Indeed, Short did

10

"not contend that defendant was 'loading, unloading, or doing mechanical work on a vehicle,' which would preclude recovery of no-fault benefits under [Mich. Comp. Laws § 500.3106(2)]." *Id.* at 435–36. Thus, the court of appeals held that Michigan Bell was not entitled to attach a workers' compensation lien on the settlement proceeds.

However, at the time *Short* was decided, Mich. Comp. Laws § 500.3106(2) was not in its current form. At that time, the statute stated,

> Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969 . . . are available to an employee who sustains the injury in the course of his or her employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arouse from the use or operation of another vehicle. . .

In 1986, the Legislature amended Mich. Comp. Laws § 500.3106(2) and explicitly added that injuries compensable under the WCDA, where the injury occurred while "[e]ntering into or alighting from the vehicle. . .[,]" were not compensable under the no-fault act. *See* P.A. 1986, No. 318. The change took effect on June 1, 1987, after *Short* was decided. It is this addition to the statute that applies in this case, as explained above, to bar the application of the no-fault act to Trueblood's suit against Ryder. Thus, *Short* is distinguishable.

### 2. Summary of Reimbursement Requirement

In sum, Trueblood's injuries are not compensable under the no-fault act. As such, it is the WCDA that applies, and, under the WCDA, AIG's lien attaches to the settlement proceeds. In other words, in his case against Ryder, Trueblood could have sought both economic and non-economic benefits. That his complaint was phrased in a way that evidences his belief that the no-fault act applies does not change this result. The Michigan

Legislature clearly intended that the no-fault act not apply to this circumstance. Therefore, the Court allows AIG to intervene in this case under Fed. R. Civ. P. 24(a)(2) to enforce its lien.[2]

### C. Amount of Reimbursement

AIG says, after applying the appropriate formula, it is entitled to enforce a lien for approximately $75,000.00. AIG shall submit an order detailing the amount of the lien and how it arrived at the total amount. The lien is based on the entirety of the settlement. If Trueblood disputes the calculation, he shall file objections and detailed calculations of what he believes to be the proper lien amount.

SO ORDERED.


S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated: June 25, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 25, 2013, by electronic and/or ordinary mail.


S/Sakne Chami
Case Manager, (313) 234-5160

---

[2] To the extent that Trueblood says that intervention should be denied because of untimeliness, his position is not well-taken. Trueblood did not inform AIG that he had filed suit against Ryder and was discussing settlement until January 31, 2013.